# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-525

**FOURTH WARD DRAINAGE DISTRICT 1**

**VERSUS**

**RACHEL L. BERTRAND**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 201711134
HONORABLE LAURIE HULIN, DISTRICT JUDGE

**********

**WILBUR L. STILES**
**JUDGE**

**********

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**REVERSED AND RENDERED; REMANDED.**

**Charles R. Minyard**
**P.O. Box 3642**
**Lafayette, Louisiana  70502**
**(337) 266-2300**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Fourth Ward Drainage District #1**


**Jacques P. Soileau**
**405 West Main Street, Suite 200**
**Lafayette, Louisiana  70501**
**(337) 769-3312**
**COUNSEL FOR DEFENDANT/APPELLEE:**
　　**Rachel L. Bertrand**

**STILES, Judge.**

Plaintiff Fourth Ward Drainage District #1 (the District) appeals the trial court's judgment denying the District's demand for access to the Acadia Parish property of Defendant Rachel L. Bertrand for purposes of inspection and maintenance of a drainage servitude located thereon. For the following reasons, we reverse the trial court's judgment and render judgment in favor of the District. We remand this matter for determination of costs and attorney fees.

## FACTS AND PROCEDURAL HISTORY

This matter arose in 2016 after residents of the Gents Park Subdivision in Acadia Parish experienced repeated instances of flash flooding in the neighborhood. The residents suggested to the District's Board of Commissioners that Ms. Bertrand had impaired drainage over and across her property which borders the H-1[1] public drainage canal located within the District's jurisdiction.

Ms. Bertrand acknowledged that, after she purchased her eighteen-acre tract in 2009, she worked to improve the drainage on the property, which she uses for a horse training business. Ms. Bertrand disputed that her own drainage affects the Gents Park Subdivision's drainage. Ms. Bertrand asserted that the flooding was instead attributable to obstructions within the subdivision as well as an irrigation pipe crossing the drainage ditch on downstream property owned by a member of the District's Board, Carl A. Hetzel, Jr. Ms. Bertrand suggested that the pipe allowed debris to accumulate and obstruct drainage.

Given her position, Ms. Bertrand resisted the District's attempts to access her property for purposes of exercising its servitude of right-of-way of 100 feet over and

---

[1] While the District identifies the canal as "H-1," the Louisiana Department of Transportation and Development identifies the canal as "Lateral L-1 W-W (L-53)."

across the bank of the drainage ditch. *See* La.R.S. 38:113. The District therefore retained counsel and delivered a September 12, 2017 demand by certified mail informing Ms. Bertrand:

> I represent the Fourth Ward Drainage District #1 of the Parish of Acadia concerning the Board of Commissioner's request for access to the above referenced property owned by you located on Hetzel Road, Crowley, Louisiana. You attended the special meeting held on September 11, 2017 wherein you declined the Board's request for access to the property during the open portion of the meeting. You are aware of complaints of flooding of property and streets and the slow drainage of water by residents of Gents Park Subdivision whose properties border your property on the north. The Drainage Board finds it is necessary to request formal access to your property by this letter to inspect the area along the Drainage Board as H-1. The Board wishes to inspect the area along the drainage ditch, including the earthen berm and pipe drop drains, in order to determine the number of pipe drop drains, their size and the capacity of the drain pipes to serve the needs of your property as well as the property which is higher in elevation according to the topographical map available to the Board.

> Please be advised the designation of the drainage ditch referenced above as L-1W-W (L-53) has been certified by the LDOTD as a public drainage ditch. Pursuant to Louisiana Revised Statute 38:113 …, the Drainage Board has control over public drainage channels, the out falls and " . . . a space of 100' on both sides of the banks of the drainage channel and canal outfalls . . ." This is a formal request for access to your property described above under the provisions of Louisiana Revised Statute 38:215.1 . . . to inspect the drainage right of way, pipe drops, the earthen berm and perform civil survey work of the ditch designated as L-1W-W (L53) (also H-1). Formal demand is hereby made upon you for that access under the statute.

> You are further notified that you may request a hearing to be held before the Drainage Board concerning this notice. After thirty (30) days of receipt of this letter, the Drainage Board intends to schedule a date and time to access the property and perform the inspection and survey work. You will receive due notice of the date and time of same. In the event you request a public hearing, please mail your request to Mr. Jerry Thompson, President of the Fourth Ward Drainage District #1 . . . .

Ms. Bertrand did not invoke the right to a hearing as acknowledged by the District's counsel and as provided by La.R.S. 38:215.1. Rather, correspondence

between counsel for the District and counsel for Ms. Bertrand reflects that Ms. Bertrand was willing to permit access for the purposes of a survey if certain conditions were met. In particular, Ms. Bertrand denied access to the Board's President, Jerri Thompson, or its Vice-President, Mr. Hetzel. The latter, Ms. Bertrand's counsel suggested, had "a conflict of interest[,]" which counsel stated would be "dealt with both judicially and ethically." Ms. Bertrand's counsel explained that law enforcement would be notified if the Board members appeared.

By reply letter of October 19, 2017, the District's counsel characterized Ms. Bertrand's conditions and demands as "unduly burdensome, overly restrictive, unnecessary and unwarranted." The District disputed Ms. Bertrand's attempt to keep the identified Board members from the property, characterizing that condition as "personal and unrelated to or in furthering any purpose associated with the Board's request for access." The District reiterated that its "request for ingress and egress to the property for access is to perform inspection and survey work to obtain facts and information necessary to make determinations by the Board." The District expressed its concern that acquiescing in Ms. Bertrand's demands would set "an unacceptable precedent" and interfere with the Board members' duties and responsibilities. Counsel stated that:

> Therefore, on behalf of the Board, I respectfully reiterate their request for ingress and egress for access to your client's property to the 100' servitude along the drainage ditch as provided by law, including all Board members, officers, employees, agents, surveyors and contractors as may be necessary and convenient at reasonable hours during the day to perform the inspection, including pipe drops, and the surveying of your client's property. The Board will agree to provide written, telephone and/or electronic notice to you and your client of the scheduling of any inspection, surveying, work, etc. to be conducted on the property not less than 24 hours prior to entry. If necessary, the Board has instructed me to file suit under the provisions of LA R.S. 38:215.1.

3

In response, Ms. Bertrand denied that twenty-four hours offered sufficient notice and instead demanded "one week notice prior to [the District's] entry onto the property giving us a time and date." Ms. Bertrand and her counsel further demanded to be present at the "inspection." By final letter dated November 10, 2017, the District's counsel rejected the demand for a week's notice, finding it again "unduly burdensome and cumbersome." Counsel explained:

> It is reasonable that access will be required on multiple occasions by different people at different times for different reasons. The inconvenience and delay of such a restrictive procedure is unwarranted and unnecessary and interferes with the performance of the Board's function to inspect, access, survey and perform necessary maintenance work. The demand prohibiting certain Board members from ingress and egress on the property for Drainage Board purposes is an unacceptable demand and would set a precedent which would interfere with the duties and responsibilities of the Drainage Board and interferes with the Board's ability to perform its functions and it does not comply with the right of access afforded by law. Please see La R.S. 38:113 and La R.S. 38:215.1. Neither statute provides such restrictive conditions as you have set forth in your letters of October 11th and November 7th. Therefore, I again reiterate the Board's finding that the conditions and restrictions set forth in your letters are unduly burdensome, overly restrictive, unnecessary and an unwarranted interference with the duties and responsibilities of the Drainage Board members and would set an unacceptable precedent for future operations of the Drainage Board with other landowners.

Given the impasse, the District filed the Petition for Access to Property for Inspection and Maintenance Work instituting this matter against Ms. Bertrand on November 27, 2017. The District detailed the history of the controversy, and noted that Ms. Bertrand neither pursued her right to a public hearing nor responded to its final letter of November 10, 2017. Asserting that Ms. Bertrand's previously-communicated conditions prevented reasonable access to the property, the District cited La.R.S. 38:113 and La.R.S. 38:215.1 in its plea for a court order "authorizing access to the property during such hours and days as may be reasonable including notification to [Ms. Bertrand] not less than 24 hours prior to entry onto the property

4

for the purposes of inspection, surveying, cleaning, clearing and excavating on said property, subject to the provisions of law[.]" The District asked that costs, expenses, and attorney fees be assessed against Ms. Bertrand. Ms. Bertrand answered the appeal by general denial of the allegations.

The District filed a motion for summary judgment in August 2018, the hearing for which was continued after the parties reached an interim agreement allowing for the District's limited access for inspection and survey.[2] The District's survey was

---

[2] The resulting January 22, 2019 Consent Judgment provided, in part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff, Fourth Ward Drainage District #1, shall engage A. Hebert Land Surveying for the purpose of inspecting and surveying the property belonging to the Defendant, RACHEL BERTRAND, including inspecting the berm, to perform a topographical survey locating and inspecting all pipe drops along the berm, to determine the elevations of the property with respect to the drainage ditch, the berm and the pipe drops and to establish the data points necessary to show the contours of the property; and

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the survey crew, employees and agents of A. Hebert Land Surveying shall be allowed free access to the property without interference from any persons to inspect the property, locate the pipe drops, establish data points and to perform all necessary work using all necessary equipment, including vehicles, four-wheelers, etc., as usual and customary in the performance of the work to be performed as professional surveyors/engineers, including the use of shovels or other tools to locate and inspect pipe drops and/or to clear weeds, grass and brush; and

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant, RACHEL BERTRAND, shall be given no less than 10-days prior notice by A. Hebert Land Surveying of the date and time the work is scheduled to begin; and

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that and there shall be no excavation work by Defendant or its agents to alter the elevation or topography of the property during the time the survey crews/personnel are allowed access to the property under this Judgement; and

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that no members of the Drainage Board shall enter the property during the survey work being performed by A. Hebert Land Surveying until further orders of the Court; and

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the trial in this matter set for January 22, 2019 be and the same is hereby continued without date and that either party may petition the Court to reset the trial at a later date[.]

thereafter completed and filed into the record. When the trial court heard the motion for summary judgment in May 2020, counsel for the District re-urged the District's request for access and explained that the District sought to "exercise its statutory jurisdiction to do some work, install some drop pipes, lower the berm in certain areas, all intended to deal with flash flooding." Counsel maintained that the work "should be to the benefit of Ms. Bertrand's property as well as anybody else." Counsel disputed that the District sought access to the entirety of Ms. Bertrand's property and asserted that it had "only ever sought access to the ditch, by the shortest and most reasonable and least detrimental … route to get to that ditch." In contrast, Ms. Bertrand's counsel suggested that the issue of access was moot given the completion of the survey but that the issue remained whether the District's proposal to perform work on the berm and to add a drop pipe was reasonable. After argument, the trial court denied the District's motion, finding genuine issues of material fact remained as to the reasonableness of the work proposed.

In January 2022, the trial court conducted a three-day bench trial on the merits of the District's petition. Both parties presented fact witnesses who explained the District's history of maintenance of the drainage ditch, the flash flooding event that led to the complaints from the Gents Park Subdivision residents, and Ms. Bertrand's ownership of her property as well as her efforts in resisting the District's proposed maintenance. The District presented expert testimony regarding the purported benefit afforded by its proposal to "reinstall" a third drop pipe[3] running from Ms.

---

[3] It is undisputed that two drop pipes drain naturally flowing water from Ms. Bertrand's property into the H-1 drainage ditch. The District suggests that the property once contained a third drop pipe which has since been removed. Ms. Bertrand, however, maintains that only two drop pipes have existed on the property since she has owned it. In any event, the District seeks to install an additional drop pipe which would capture the natural flow of water moving in a north-south direction across Ms. Bertrand's property and into the drainage canal.

Bertrand's property into the drainage canal as well as its related proposal to lower the berm height in the area surrounding the drainage pipes. In contrast, Ms. Bertrand's expert disputed certain elevation data relied upon by the District and suggested that the proposed project would offer little benefit given the relatively slow east/west flow from the drainage ditch itself.

At the close of argument, the trial court questioned whether the District's initial, September 10, 2017 letter provided adequate notice of the District's proposal. After consideration, the trial court rendered written reasons recognizing that the H-1 drainage canal is within the District's jurisdiction and that it is a public drain channel protecting the interests of the public in general. However, the trial court found that the District could not prevail on its request as it had not provided the notice required by La.R.S. 38:215.1. The trial court reasoned, in part:

> It is uncontested that the Fourth Ward Drainage Board has the authority over the H1 drainage canal. In order for the plaintiff to access the public drainage through the use of the defendant's property, the access must be within the normal course of the plaintiff's duties **and** written notice must be given to the landowner at least thirty days prior to the commencement of any maintenance activities on the property. On September 12, 2017, counsel for the Fourth Ward Drainage District #1, Thomas Regan, sent notice to Ms. Bertrand, which stated in part:
>
> > This is a formal request for access to your property described above under the provisions of Louisiana Revised Statu[t]e 38:215.1 to inspect the drainage right of way, pipe drops, the earthen berm and perform civil survey work of the ditch designated as L-1-W-W (L-53) (also H-1).
>
> Plaintiff refused. After suit was initiated, plaintiff and defendant entered into a consent judgment on January 29, 2017. The judgment allowed the plaintiff to enter upon the property for the purpose of inspection and survey as requested in the notice sent on September 12, 2017. Thereafter, an inspection and survey were completed.
>
> Plaintiff petitions this court for access to the property of Rachel Bertrand for the purpose of inspection, surveying, cleaning, clearing, excavating and maintenance work on the property of Rachel Bertrand

7

and maintenance work on the berm located within the 100 foot right of way. The notice specifically listed inspection and survey. The drainage board was granted access and completed the inspection and survey. This court finds that the drainage board failed to provide any written notice to the landowner at least 30 days prior to the commencement of any additional maintenance activity on the property as required in Louisiana Revised Statu[t]e 38:215.1. Therefore, due process notice to the adjacent property owner was not satisfied. This court finds in favor of the defendant. As the prevailing party, the defendant is hereby entitled to an award of court cost[s] and attorney's fees incurred by the prevailing party.

The trial court determined the latter-referenced costs and attorney fees following separate proceedings.

The resulting final judgment of March 4, 2022 reflected the trial court's finding in favor of Ms. Bertrand due to the District's failure to "to carry their burden of proof." The trial court awarded Ms. Bertrand costs in the amount of $13,644.12 and attorney fees in the amount of $49,175.00.

After the trial court denied the District's motion for reconsideration, the District appealed, assigning the following as error:

1.    The Trial Court erred when it "found in favor of the defendant" based on lack of notice in compliance with La. R.S. § 38:215.1.

2.    The Trial Court erred in failing to award judgment in favor of the Drainage District when the evidence showed that the project at issue would benefit all parties.

3.    The Trial Court erred in awarding attorney's fees to Bertrand, rather than the Drainage District.

## DISCUSSION

*Louisiana Revised Statutes 38:215.1*

The District first addresses the trial court's foundational determination that it failed to satisfy the notice requirements required for its entry onto Ms. Bertrand's property. On this point, La.R.S. 38:215.1, entitled "Public drainage; refusal of access for maintenance purposes; court costs and attorney fees; definitions" provides:

A. No landowner shall refuse to grant reasonable surface access to any existing natural or artificial public drainage by a local governing authority, drainage district, or other public entity charged with maintaining the public drainage when such access is within the normal course of the entity's duties and *written notice has been given to the landowner at least thirty days prior to the commencement of any maintenance activities on the property.* The landowner shall also be given an opportunity for a public hearing, held before the municipal drainage authority, parish drainage district, or public works district for the city where the landowner's property is located, subject to the judicial review rights under the Administrative Procedure Act.

B. In any action in a court of competent jurisdiction where the court is required to determine the right of access to the public drainage pursuant to this Section, the prevailing party shall be entitled to an award of court costs and attorney fees incurred by the prevailing party.

C. For purposes of this Section, "public drainage" means any existing natural or artificial drainage ditch, drain, culvert, canal, creek, bayou, or small river.

D. For purposes of this Section, "reasonable surface access" means the utilization of existing ingress and egress points on a landowner's property so as not to disrupt the activities of the landowner or cause damage to the property.

(Emphasis added.)

The trial court resolved the notice inquiry by reference to the District's September 12, 2017 certified letter to Ms. Bertrand seeking access to her property under the provisions of La.R.S. 38:215.1 in order to "inspect the drainage right of way, pipe drops, the earthen berm and perform civil survey work of the ditch designated as L-1 W-W (L-53) (also H1)." The trial court noted that the "inspection" and the "survey" had been conducted pursuant to the consent judgment but that the District had not otherwise provided notice of "any *additional maintenance* activity on the property as required in Louisiana Revised Statu[t]e 38:215.1." In light of its determination that the District failed to comply with the statute's due process requirement, the trial court concluded that the District failed to sustain its burden of proof for access to the property.

Following review, we conclude that the trial court's construction of the notice requirement of La.R.S. 38:215.1 was overly narrow, particularly in light of the realities of this now five-year old suit. The statute references a drainage district's need to access property within the drainage district's "normal course" of its duties and its provision of notice prior to the commencement of "maintenance activities[.]" The focus of the statute is on the fact of access and the temporal element of the notice. The statute does not require a particularized designation of the type of "maintenance activities" anticipated and, functionally, the specific "activities" required may not be discernable until the completion of preliminary activities such, as in this case, inspection and surveying. To require the District to provide notice for preliminary activities and return for further maintenance following an additional thirty-day notice implies a type of piecemeal operation counterproductive to the District's duties.

Moreover, in this case, the trial court's singular focus on the September 2017 certified letter ignores the progression of this case and Ms. Bertrand's actual notice of the proposed maintenance. As seen in the correspondence excerpted above, Ms. Bertrand ultimately became aware of the details of the District's proposed work on the drainage canal, attended public meetings in that regard, had particularized notice of the proposed "maintenance" by the filing of the 2017 lawsuit instituting this matter on that very topic, and, in fact, litigated the reasonableness of the maintenance. Ms. Bertrand engaged her own expert engineer to review the District's proposal and litigated the matter over the course of three days. To conclude that a five-year-old notice was procedurally deficient and otherwise fatal to the District's claim elevates form over substance under these facts.

We do not, however, suggest that the District not inform Ms. Bertrand of the date and time of its proposed entry onto her property. We merely hold here that La.R.S. 38:215.1 is not so rigidly drafted as to require the District to have provided Ms. Bertrand with every detail of the "maintenance activities" for which it sought entry. In casting the decree below, we order that the District provide Ms. Bertrand with a week's notice prior to the commencement of its further maintenance activities.[4]

Accordingly, finding that La.R.S. 38:215.1's notice requirements have been amply met in this case, we turn to consideration of the merits of the District's case. We do so on de novo review of the record. *See Kinnett v. Kinnett*, 20-1134, p. 7 (La. 12/10/21), 332 So.3d 1149, 1154 ("[W]here one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record.")

*Louisiana Revised Statutes 38:113*

It is unquestioned in this case that the District has a legal servitude over the drainage canal at issue pursuant to La.R.S. 38:113, which provides:

> The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules

---

[4] This schedule is provided in order to facilitate the District's orderly exercise of its servitude under the circumstances of this case. *See* La.Code Civ.P. art. 2164 ("The appellate court shall render any judgment which is just, legal, and proper under the record on appeal.").

and regulations for preserving the efficiency of the drainage channels or outfall canals.

Jurisprudence interpreting La.R.S. 38:113 has determined that a drainage district seeking to exercise its servitude must demonstrate 1) that it had previously improved the drainage channel or adopted the drainage channel without prior improvement as a necessary part of or extension to improved drainage channels; and 2) that the drainage channel is a public channel. *See South Fork Holdings, LLC v. Cameron Par. Gravity Drainage Dist. No. 8*, 22-58 (La.App. 3 Cir. 11/23/22) (unpublished opinion) (quoting *Whipp v. Bayou Plaquemine Brule Drainage Bd.*, 476 So.2d 1042 (La.App. 3 Cir. 1985)). *See also Berard v. St. Martin Par. Gov't*, 13-114 (La.App. 3 Cir. 6/5/13), 115 So.3d 761. In *Whipp*, a panel of this court explained that a court is not to substitute its judgment as to the necessity of a drainage district's project relating to the servitude created by La.R.S. 38:113 absent evidence of an abuse of discretion.

The record firmly establishes the first element as the District presented testimony regarding its maintenance of the H-1 canal at its location on Ms. Bertrand's southern border and with which Ms. Bertrand cooperated.

The record similarly establishes the second factor, *i.e.*, that the canal is a public channel which has "been used for the purpose of drainage for many years and that this drainage protects the interest of the public in general rather than the interest of particular individuals." *See Whipp*, 46 So.2d at 1046. While Ms. Bertrand objected to the benefit offered by the District's proposed drainage project, she has failed to demonstrate that the proposal was an abuse of the discretion afforded the District to have "control" over the drainage canal and "to adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals." Rather, the

12

proposed maintenance appears to fit firmly within the District's control, jurisdiction, and discretion.

Most pointedly, the District presented the testimony of Robert W. Pothier, accepted by the trial court as an expert in civil engineering with expertise in public and private drainage. Mr. Pothier explained that the subject portion of the H-1 canal had once been equipped with three drop pipes facilitating the movement of water collecting against the northern canal berm into the drainage ditch. However, at the time the subject project was proposed, only two remained. Therefore, the District proposed to create an "emergency overflow weir" by reinstalling the third drop pipe and lowering the height of the berm on each side of the three pipes. Mr. Pothier explained that the expedited movement of water would benefit both the Gents Park Subdivision, located north of Ms. Bertrand's property, and Ms. Bertrand's property in the event of flash flooding. Mr. Pothier described the project as minimal in nature and estimated that it would cost $3000-$4000 at most, take no more than a day to a day-and-a-half, and would only require the use of a "mini excavator." He explained that the project would not interfere with Ms. Bertrand's property. Mr. Pothier described the proposed project as reasonable given its potential to alleviate flash flooding.

Ms. Bertrand presented her own expert witness in opposition. Simon Alexander Guillory, accepted as an expert in civil engineering with expertise in hydraulic engineering as well as drainage and/or public works, suggested that the benefit of the District's proposal to the Gents Park Subdivision was overrepresented, although he conceded that it could benefit Ms. Bertrand's property. Namely, using different elevation data than that used by the District, Mr. Guillory opined that the flooding experienced in the area was not caused by insufficient movement of water

from the north into the canal, but from the relatively slow downstream conveyance out of the canal. Mr. Guillory attributed the slow downstream conveyance both to the narrow width of the H-1 canal and to the relatively level topography of the area. On questioning by counsel for Ms. Bertrand, Mr. Guillory also recognized that the irrigation pipe on Mr. Hetzel's downstream property posed a risk of obstruction due to its potential to gather debris.

Throughout these proceedings, Ms. Bertrand focused both on the downstream irrigation pipe on Mr. Hetzel's downstream property and purported obstructions within the subdivision itself as potential sources for flooding in the area. Her focus, however, is misplaced in the analysis attendant to La.R.S. 38:113 and the District's ability to exercise its legal servitude. Simply, the inquiry is whether Ms. Bertrand has presented evidence to indicate that the District's pursuit of *its proposed project* is an abuse of discretion. She has not done so, simply insisting that different projects could better address the flooding concerns. While Ms. Bertrand points to these other potential projects, she has not otherwise demonstrated that the District's methodology is unreasonable, unreliable, or unfounded. Simply, Ms. Bertrand has not produced evidence requiring a finding that the District's plan was an abuse of its discretion in the management of the drainage servitude. *See Whipp*, 476 So.2d 1041 (providing for the review of a drainage district's proposed project by the abuse of discretion standard).

Moreover, while Ms. Bertrand posits that improvements to the downstream movement of the canal channel itself will diminish the risk of flooding, her preferred remedy is not exclusive of that offered by the District. Rather, Ms. Bertrand's remedies are simply not the avenue sought by the District at this time, and such

authority to manage the servitude is left to the District by virtue of the "control" conveyed over its use by La.R.S. 38:113.

Accordingly, we below grant judgment in favor of the District under the statutory authority of La.R.S. 38:113 and La.R.S. 38:215.1, allowing the District to exercise its legal servitude on the drainage canal at issue.

*Costs and Attorney Fees*

Our above determination requires a reversal of the trial court's award of court costs and attorney fees to Ms. Bertrand under the authority of La.R.S. 38:215.1(B), which provides that "[i]n any action in a court of competent jurisdiction where the court is required to determine the right of access to the public drainage pursuant to this Section, the prevailing party shall be entitled to an award of court costs and attorney fees incurred by the prevailing party." As we have found that the District has a "right of access to the public drainage pursuant to [La.R.S. 38:215.1]," we find it appropriate to award the District, as the prevailing party, its costs and attorney fees. Although the record includes certain costs and fees incurred by the District following earlier proceedings, we find it appropriate to remand the matter to the trial court for a determination of the costs incurred in the trial court and the attorney fees incurred in both the trial court and in pursuit of this successful appeal. Below, we award costs incurred in this court to the District as the prevailing party.

**DECREE**

For the foregoing reasons, the trial court's judgment of March 4, 2022 is reversed. Judgment is hereby entered in favor of Plaintiff/Appellant Fourth Ward Drainage District No. 1 and against Defendant/Appellee Rachel L. Bertrand.

It is hereby ordered, adjudged and decreed that Plaintiff/Appellant Fourth Ward Drainage District No. 1 is authorized to access Defendant/Appellee Rachel L.

15

Bertrand's subject property to exercise the public drainage servitude established by La.R.S. 38:113 and La.R.S. 38:215.1. Plaintiff/Appellant Fourth Ward Drainage District No. 1 shall provide written notice to Defendant/Appellee Rachel L. Bertrand with at least seven days prior to the commencement of its maintenance activities on the property.

This matter is remanded for the trial court's determination of the costs and attorney fees awardable to Plaintiff/Appellant Fourth Ward Drainage District No. 1 as the prevailing party under La.R.S. 38:215.1.(B).

Court costs incurred on appeal are assessed against Defendant/Appellee Rachel L. Bertrand.

**REVERSED AND RENDERED; REMANDED.**